USCA1 Opinion

 

 March 18, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-2161 VALERIE A. BRAYALL AND RICHARD M. BRAYALL, Plaintiffs, Appellants, v. DART INDUSTRIES, ET AL., Defendants, Appellees. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ___________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ___________________ Richard M. Brayall and Valerie A. Brayall on brief pro se. _________________________________________ Christopher R. O'Hara, Nutter, McClennen & Fish, and Ray C. ______________________ ________________________ ______ Stoner, Eckert, Seamans, Cherin & Mellott, on brief for ______ _____________________________________ appellees. __________________ __________________ Per Curiam. This is an appeal from a district ___________ court order refusing to reopen a judgment entered pursuant to a settlement agreement. Appellants, Valerie and Richard Brayall, filed their motion to reopen almost two years after _________ the settlement order of dismissal. I. _ The Brayalls, former Tupperware distributors, filed an action in May 1987 in Massachusetts superior court against appellees, Dart Industries and various individuals ("Dart"). The complaint contained charges that Dart had violated RICO. Essentially, the Brayalls were unhappy with their distributorship, claiming that they were misled as to how much money they would earn. As a result of the RICO claims, Dart removed the action to the Massachusetts federal district court. The district court then remanded the state claims to state court. On August 30, 1989, the attorney for the Brayalls sent a letter to the district court informing it that the RICO claim had been settled. The letter stated that the parties had reached an agreement "in principle" which included the dismissal of the RICO claim "with prejudice." The letter went on to provide that the parties "shall soon be filing the required paperwork." Accordingly, the district court issued, on August 31, 1989, a settlement order of dismissal. The order provided for the dismissal "without -2- prejudice to the right of any party upon good cause shown within 60 days, to reopen the action if settlement is not consummated." Nothing happened until May 20, 1991, when the Brayalls, now appearing pro se, filed their motion to reopen. As support for this motion, they argued that (1) no "settlement papers or signed agreements" had been filed with the court; (2) a "suggestion of bankruptcy," although docketed on February 20, 1990, should have operated as an automatic stay of the RICO action; (3) their attorney had resigned before the 60-day period had ended; (4) they were forced into bankruptcy due to the cost of the litigation; (5) evidence was withheld concerning the RICO claim; and (6) there existed "overwhelming evidence" of mail and wire fraud. Dart opposed this motion and moved to enforce the settlement. Attached to Dart's motion was a letter dated August 28, 1989, sent by the Brayalls' attorney to counsel for Dart. This letter set forth the specific terms of the agreement; it not only affirmed that the RICO action was to be dismissed but also detailed the financial terms of the settlement of a collection action (also pending in the district court) initiated by Dart against the Brayalls. In further support of its opposition to the motion to reopen, Dart submitted an affidavit of the Brayalls' attorney filed in state court in which he stated: -3- Agreements were reached to settle the two Federal Court litigations in August of 1989. The terms were set out in letter form and the Federal Court was notified. However, the Brayalls withdrew their approval of the settlements before the confirmatory paperwork was prepared and executed. The Brayalls also discharged me, after I indicated that I was not willing to renege on the agreements. Also attached to Dart's opposition was a letter sent by the Brayalls to a superior court judge. In it, they indicated that they had agreed to the settlement so that they could proceed to trial in the state case. The Brayalls filed an answer to the motion to enforce the settlement in which they argued, in addition to the claims in their motion to reopen, that their attorney had failed to notify the district court that the terms of the settlement had not been fully agreed upon, that the settlement agreement was unfair, that they had settled only because they were facing bankruptcy, that Dart had refused to engage in discovery and that the Brayalls had not waived their right to reopen the case. II. __ "The decision to grant or deny a motion for relief from a final judgment is committed to the sound discretion of the trial court." United States v. Boch Oldsmobile, Inc., _____________ _____________________ 909 F.2d 657, 660 (1st Cir. 1990). Thus, we will reverse the district court's decision only upon a demonstration of abuse of discretion. Id. Where litigants have voluntarily __ determined not to pursue their claims, the party seeking -4- relief bears an especially heavy burden to show the presence of "extraordinary circumstances." Id. The considerations __ relevant to our inquiry on appeal are whether the Brayalls can show a good reason for not taking action sooner and whether Dart has been prejudiced by the delay. See id. at ___ __ 661. The reasons stated by the Brayalls do not adequately explain the length of time between the order of dismissal and the filing of the motion to reopen. It appears that within the 60-day period they had in fact decided that they did not wish to settle. In his affidavit, their attorney states that they withdrew their approval of the settlement terms and, as a result, discharged him. Further, according to the Brayalls themselves, their attorney's "resignation" occurred before the expiration of the 60 days. Thus, it appears that the Brayalls were in a position to file a motion to reopen within the time limit set by the district court or at least very shortly thereafter. Yet two years elapsed before they did so. Even if we disregarded the remarkable length of the delay, it is impossible to discern from the Brayalls' filings any substantial basis to justify undoing a final judgment. References to exhaustion, duress and coercion abound, but there is no coherent account of facts to support such claims. It may well be that the expense and burden of litigation -5- impelled the Brayalls to countenance a settlement, but that is part of many settlement equations and no basis for setting one aside. Nor is the strength of their claims a basis for reopening or else no such dismissal would ever be final. The Brayalls argue that there was no meeting of the minds as to their settlement and that no signed papers were ever filed. This argument misses the essential point: the Brayalls are attacking a judgment dismissing their case. ________ Having discharged their attorney and taken the litigation into their own hands, it was their responsibility to file in the district court promptly if the settlement collapsed and they wished to reopen. They did not do so and, absent an extraordinary excuse for the lengthy lapse, may not do so now. For the foregoing reasons, the judgment of the district court is affirmed. ________ -6-